## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| **LINH N. BASS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. _____1:24-cv-85_____ |
| **JOSHUA JACKSON, JASON** | § | |
| **SCHMOKER, KENNETH BEAN,** | § | JURY REQUESTED |
| **OFFICERS DOE #1 - #4, and CITY OF** | § | |
| **BEAUMONT, TEXAS,** | § | |
| *Defendants* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

*Around July 20, 2022, Plaintiff Bass was the manager on duty at a Beaumont area fitness center and had her young child in its Kids Club. The gym was packed with families and staff who knew Plaintiff. Seven officers—believed to consist of five from the Beaumont Police Department Special Assignment Unit and two from the Louisiana Ascension Parish Sherriff's office—entered the gym, approaching her as a group as if she posed a danger.*

*She cooperatively offered to meet them at the police station once another employee was found to cover for her. The officers refused, took her cell phone and purse, handcuffed her, and transported her to the police station where they interrogated her. Their questions weren't time sensitive, arising from an incident 27 months earlier (~April 19, 2020) when a person she had dated (Joey Joffrion) ran into a deputy while driving an ATV in Louisiana.*

*The officers should have known a legal arrest requires an arrest warrant or probable cause with exigent circumstances (such as risk of flight), yet apparently had neither. She sues under 42 U.S.C. § 1983 for violation of Fourth Amendment rights against unreasonable seizure, for conspiracy, and for deliberate indifference in failure to train.*

## II. JURISDICTION AND VENUE

1.      This Court has jurisdiction as this lawsuit involves federal questions (28 U.S.C. § 1331), arising under laws such as 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights); and seeks relief from a deprivation of equal rights (28 U.S.C. § 1343).

2.      Venue is proper in this Beaumont Division, pursuant to 28 U.S.C. § 1391, as the Eastern District of Texas is where one or more Defendants reside and where a substantial part of the events or omissions giving rise to the claim occurred.

## III. PARTIES[1]

3.      Plaintiff Monglinh Ngo ("Linh") Bass is an individual residing in Jefferson County, Texas, within the Beaumont Division of the Eastern District of Texas federal courts.

4.      All Defendants who are people are sued in their individual, not official, capacities.

5.      Defendant Joshua S. Jackson is an individual believed to reside in the Eastern District of Texas and to have been a member of the Beaumont Police Special Assignment Unit (SAU).

    5.1.    He appeared to be leading the operation to arrest Plaintiff Bass and to have overseen the collection of DNA from Plaintiff Bass.

6.      Defendant Jason H. Schmoker is an individual believed to reside within the Eastern District of Texas and to be a member of the Beaumont Police SAU.

    6.1.    As a member of the SAU, he is believed to have taken part in the events at issue.

7.      Defendant Kenneth L. Bean is an individual believed to reside within the Eastern District of Texas and to be a member of the Beaumont Police SAU.

    7.1.    As a member of the SAU, he is believed to have taken part in the events at issue.

---

[1] Home addresses are not listed here to protect the privacy of the police officers.

8.       Officer Doe #1 is an individual believed to reside within the Eastern District of Texas and to have been a member of the Beaumont Police SAU.

   8.1.    As a member of the SAU, he is believed to have taken part in the events at issue.

9.       Officer Doe #2 is an individual believed to reside within the Eastern District of Texas and to have been a member of the Beaumont Police SAU.

   9.1.    As a member of the SAU, he is believed to have taken part in the events at issue.

10.      Officer Doe #3 is an individual believed to reside in Louisiana, to have been an employee of the Ascension Parish Sheriff's office, and to have taken part the events at issue.

   10.1.   His involvement in the events at issue took place in the Eastern District of Texas.

11.      Officer Doe #4 is an individual believed to reside in Louisiana, to have been an employee of the Ascension Parish Sheriff's office, and to have taken part the events at issue.

   11.1.   His involvement in the events at issue took place in the Eastern District of Texas.

12.      The Defendants are pictured below entering the gym and then taking Plaintiff away:

 

13.     These Defendants are expected to be served in person.

14.     The Doe defendants' names will be identified as information becomes available.

15.     Defendant City of Beaumont, Texas is a municipality and is expected to be served by personal service on its mayor (if the City does not choose to consent to waiver of service).

## IV. FACTUAL CONTEXT[2]

16.     Defendant Linh Bass has no criminal history (other than minor traffic violations).

17.     Nor has she been charged with any crimes related to April 2020 events in Louisiana.

18.     Prior to the July 2022 events at issue in this suit, she already had given a voluntary statement to the sheriff's office of Ascension Parish, Louisiana.

19.     No arrest warrant was ever issued for Plaintiff in Texas.

   19.1.     In the unlikely event such a warrant existed, it was known to one or more of the officers involved in these events to be invalid, such as for lacking probable cause or because it was based on material misrepresentations, omissions, or both, having been made to the issuing magistrate.

20.     No arrest warrant was ever issued for Plaintiff in Louisiana.

   20.1.     Alternatively, in the unlikely event such a warrant existed, it was known to one or more of the officers involved in these events to be invalid, such as for lacking probable cause or not being a legally proper basis for conducting an arrest in Texas, or because it was based on material misrepresentations, omissions, or both.

21.     Nor does it appear a valid warrant to collect a DNA sample from Plaintiff existed.

   21.1.     Even if it turns out one did exist, that did not automatically justify the arrest.

---

[2] Facts and claims in the suit are asserted in addition and in the alternative, based on the limited information available pre-discovery, and so are subject to supplementation and correction.

21.2.    Additionally or alternatively, it was known to one or more of the officers involved in these events to be invalid, such as for lacking probable cause or not being a legally proper basis for collecting a DNA sample in Texas, or because it was based on material misrepresentations, omissions, or both, being made to the magistrate.

22.    Around 10:40 a.m. on July 20, 2023, the group of officers named in this suit as defendants entered en masse the fitness center where Plaintiff was working as a manager.

23.    The number of officers involved was more consistent with arresting a dangerous criminal suspect than questioning a witness who already had given a voluntary statement.

24.    The unnecessarily large number of officers involved was objectively intimidating for a person like Plaintiff Bass who had no criminal history and understood herself to be at most only a witness, not a suspect.

25.    Approximately five of the officers are understood to have been from the Beaumont Police Department Special Assignment Unit, which handles high-profile and high-risk arrests.

26.    The use of the Special Assignment Unit for what was described as simply needing to ask a witness questions was objectively intimidating.

27.    One or more of the officers involved was aware that Plaintiff Bass had no criminal history.

28.    One or more of the officers was aware no prior effort had been made to request that Plaintiff voluntarily come to the police station.

29.    One or more of the officers was aware that Plaintiff was not requested to voluntarily cooperate in giving a DNA sample, such as at her place of employment.

30.    None of the officers had a factual basis to believe Plaintiff Bass would be uncooperative.

31.    None of the officers had a factual basis to believe Plaintiff Bass would flee.

32.    None of the offers had a factual basis to believe Plaintiff posed a danger to them or others.

33. Instead, the unnecessary show of force was intended to intimidate Plaintiff and to cause her to refrain from objecting to the illegal seizure of her (the arrest), to the taking of her DNA, or both.

34. One or more of the involved officers were aware that they lacked a warrant to collect her DNA (or, if having such a warrant, that it did not automatically justify arresting her).

35. One or more of the involved officers were aware that no valid arrest warrant had been issued for Plaintiff Bass.

36. One or more of the same involved officers were aware that they lacked probable cause to believe Plaintiff committed a crime for which they could not await an arrest warrant.

37. One or more of the involved officers were aware that they lacked probable cause to collect Plaintiff's DNA.

   37.1. For example, she was neither a suspect, nor on probation, nor present at the scene at the time that the person in Louisiana drove into a deputy with his ATV.

38. Two or more of the involved officers decided to proceed with the arrest of Plaintiff Bass though aware it was more likely than not there was no legal justification for doing so.

39. Defendants' actions were consistent with an arrest of a criminal suspect versus gathering facts through a temporary brief detention of a witness at a crime scene. For example:

   39.1. The large number of officers involved was objectively intimidating, at least for someone known to the officers to have no criminal history.

   39.2. Plaintiff Bass was ordered to accompany the officers away from her job.

   39.3. Plaintiff Bass was not allowed to await the arrival of another employee to take over her duties in managing the fitness center.

39.4.   Plaintiff Bass was required to leave the premises despite her being responsible for her son and a friend's baby who were being cared for at the facility that day.

39.5.   Plaintiff Bass was not allowed to travel by her own vehicle to meet the police officers at police headquarters.

39.6.   The officers declined Plaintiff's offer to answer their questions in a private room at her place of employment.

39.7.   One or more of the officers visibly was armed with a gun, taser, or both.

39.8.   The officers did not collect a DNA sample from her at her place of employment, though they were capable of doing so and she would have consented to it.

39.9.   Plaintiff was transported in handcuffs and in a police vehicle to the police station.[3]

39.10.  Plaintiff was read her *Miranda* rights at the police station.

39.11.  Plaintiff was interrogated at the police station.

39.12.  A DNA sample was taken from Plaintiff at the police station.

39.13.  One or more of the officers claimed to have a warrant for the DNA collection.

39.14.  The detention did not occur in connection with a crime that Plaintiff had just witnessed, rather in relation to events of more than two years earlier.

39.15.  From the time of leaving her place of employment with the officers until a police vehicle returned her to it, well over an hour passed—possibly multiple hours.

39.16.  The City and its police force decided to use a handful of officers apparently from the Special Assignment Unit—as if their interactions with Plaintiff were high profile or high risk—rather than use a smaller number or ordinary patrol officers.

---

[3] While Defendants may claim that transporting her required her to be in handcuffs, they could have let her drive her own vehicle to the police station. As well, Beaumont police at other times have allowed witnesses to ride in police vehicles without their being handcuffed.

40.    A reasonable person in Plaintiff's position would not have felt free to leave, to terminate the encounter, or to decline the officers' direction to accompany them out of the premises, such as because of:

    40.1.    the number of officers,

    40.2.    their carrying visible firearms and/or tasers,

    40.3.    their display of badges,

    40.4.    their law enforcement uniforms,

    40.5.    the fact the operation was carried out at her place of employment;

    40.6.    or some combination of such facts.

41.    One or more of the officers knew that a fellow officer was violating her constitutional rights by arresting Plaintiff Bass without having a legal justification for doing so.

42.    One or more of the officers observing the arrest who had knowledge it was improper had a reasonable opportunity to prevent the violation.

    42.1.    For example, during the planning or execution of the arrest, one of the officers could have encouraged his colleagues to await a valid arrest warrant.

    42.2.    Or one of the officers could have objected that Plaintiff Bass was being treated as someone who had just committed a serious crime rather than as a witness.

    42.3.    Or one of the officers could have encouraged the others to see if Plaintiff would provide a DNA sample voluntarily rather than while under arrest circumstances.

43.    Though aware of the impropriety in which his/their fellow officers were engaged, one or more of the officers chose not to try to halt the violation of Plaintiff's constitutional rights.

44.    As a result of having a large number of officers force Plaintiff to leave her place of employment on short notice and/or due to her being handcuffed in the parking lot and driven away, the actions of one or more Defendants caused her reputational damage.

45.    Plaintiff Bass also suffered significant emotional distress as a result of events such as:

    45.1.    Having a large number of uniformed and armed officers force her to leave her place of employment on short notice.

    45.2.    Being ordered to leave without letting her wait for someone else to come in to cover her duties as manager.

    45.3.    Being forced to leave by the officers though she was responsible for her youngest son and a friend's baby who were being cared for at the facility that day.

    45.4.    Having her personal items (purse, cell phone) taken from her.

    45.5.    Being handcuffed by one or more of the defendants.

    45.6.    Being transported like a prisoner to the police station.

    45.7.    Being read her *Miranda* rights as if she were a suspect rather than witness.

    45.8.    Being interrogated at the police station.

    45.9.    Being told there was a warrant to take a DNA sample from her;

        45.9.1.    She could have given the sample to the officers at her place of employment or under other truly voluntary circumstances.

    45.10.  The detention's lasting well over an hour and possibly multiple hours.

46.    While Plaintiff previously thought of herself as having a positive relationship with law enforcement officers, seeing a group of police now causes her to worry she will again be arrested without a valid legal basis.

47. Plaintiff Bass reported these matters to Officer Joseph Crosby of the Beaumont Police Department and provided him with video from the gym.

48. Yet it appears no disciplinary or other corrective action was taken, leaving her with this lawsuit as the only means of obtaining justice for the violation of her rights.

49. The City of Beaumont's failure to take corrective action against any of the officers involved is consistent with the City's earlier failure to adequately train such officers to protect the Fourth Amendment constitutional rights of citizens who may be arrested and/or have DNA samples collected from them.

50. City policymakers know to a moral certainty that their police officers will be conducting arrests and have armed their officers with guns and badges to enforce that authority.

51. Such policymakers also are aware that police take DNA samples, which are invasive of privacy and should be collected only with true consent or in other limited circumstances.

52. The City thus needed to train its offers in at least the very basic constitutional rights of citizens in such situations.

   52.1. For example, that non-emergency arrests require a warrant.

   52.2. As well, that collection of DNA requires true consent, a warrant, or probable cause, or is otherwise limited to special circumstances.

53. It is so obvious that failure to train officers in the basics of such rights will lead them to violate citizens' rights and that the City can be characterized as acting with deliberate indifference to the rights of persons such as Plaintiff Bass.

54. It is a readily predictable outcome of the City's failure to train officers who regularly conduct arrests that a warrant is required in non-exigent circumstances that persons like

Plaintiff will be subject to violations of their Fourth Amendment rights—as did happen to her.

55.    It is likewise readily predictable that the deliberately indifferent failure to train officers in the constitutional requirements for collecting DNA samples would—as happened to her—violate the privacy and other rights of citizens granted by the 14th Amendment.

56.    The fact that the City used officers apparently primarily from the Special Assignment Unit—believed to handle cases that are especially high risk and/or high profile—is further confirmation that the City considered the Fourth Amendment rights of innocent citizens like Plaintiff Bass to be an unwarranted distraction from their work.

    56.1.    If even officers of an elite unit are untrained in basic rights associated with seizure of a citizen by arrest, how can rank and file officers be expected to know them?

57.    The use of the SAU officers to bring in a non-violent and cooperative witness also reflects a decision that a show of force was a higher priority than protecting Plaintiff's rights.

58.    The fact that none of the multiple officers involved objected or intervened to stop the warrantless arrest is another confirmation the City's widespread failure to train was rooted in deliberate indifference to the rights of citizens rather than from mere neglect/ignorance.

59.    This was not a single officer making a single error of law; instead it was a handful of elite officers who planned out their actions before they decided to violate Plaintiff's rights.

60.    The City engaged in this deliberate indifference to the rights of persons like Plaintiff though those rights were clearly established law by law and fundamental in nature.

61.    For example, it should be apparent to even a minimally trained police officer that someone may not be arrested without a warrant in the absence of probable cause and without exigent circumstances that would make awaiting a warrant impracticable.

62.    Likewise a minimally trained officer should be aware that DNA samples cannot be collected without probable cause, a warrant, true consent, or other special circumstances.

63.    As a municipality dealing with citizens' rights under the Fourth Amendment, the City was acting under color of law when it chose to fail to train officers like those involved here.

64.    The officers also were acting under color of state law in their actions on the day of the arrest. For example:

64.1.    They wore badges and clothing identifying themselves as law enforcement.

64.2.    They ordered her to leave her place of employment with them.

64.3.    They took her purse and cell phone from her.

64.4.    They traveled in one or more marked police vehicles.

64.5.    They used police-issued handcuffs on Plaintiff.

64.6.    One or more of them were visibly carrying a firearm and/or taser.

64.7.    They took her to police headquarters for questioning.

64.8.    They interrogated her in a room often used with criminal suspects.

64.9.    They claimed to have a warrant to collect her DNA.

64.10.  They read her *Miranda* rights.

65.    Plaintiff will continue to experience emotional distress over these matters, at least until they are resolved by a jury verdict and court judgment or put to rest by agreed resolution.

66.    In order to protect her rights and obtain justice for the violation of them, Plaintiff Bass was required to obtain the services of the undersigned legal counsel.

67.    As a result of having a large number of officers force Plaintiff to leave her place of employment on short notice and/or due to her being handcuffed in the parking lot and driven away, the actions of one or more Defendants also caused her reputational damage.

68.    The collection of a DNA sample from Plaintiff was a violation of her Fourth Amendment rights by the involved officers. For example:

    68.1.    her consent to it occurred under the coercion of an illegal arrest and the unnecessary removal of her from her workplace and away from her son who was cared for there;

    68.2.    she was not a suspect, nor on probation, nor a crime victim, nor present at the scene of the driving of the ATV into the deputy in Louisiana; and

    68.3.    it appears the claim the officers had a warrant for her DNA was not true.[4]

## V. LEGAL CONTEXT

69.    The Fourth Amendment is applicable to the states by way of the Fourteenth Amendment.

70.    The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause . . . ."

71.    An arrest is widely recognized by courts as constituting one form of a seizure.

72.    It is well-established law that an arrest must be based either on a valid arrest warrant or the arresting officer's having probable cause to believe a serious crime was committed and when exigent circumstances do not permit awaiting issuance of an arrest warrant.

73.    It is established law that even a witness to a crime that occurred years earlier cannot be arrested as if they instead were a criminal suspect (nor in a manner other than a brief temporary detention at the scene of a recent crime while it initially is being investigated).

74.    It is established law that the collection by the police of a DNA sample from a citizen requires a warrant, or probable cause, or voluntary consent of the citizen, or other special circumstances, or some combination of such factors.

---

[4] Plaintiff has not been provided with a copy of an arrest warrant nor one for taking her DNA.

75.    A police officer can be held liable under a bystander theory of liability where the officer was aware a citizen's constitutional rights were being violated and the officer had an opportunity to attempt to halt the violation, but the officer chose not to try to stop it.

76.    42 U.S.C. § 1983 imposes liability for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" caused by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."

77.    To prevail on a § 1983 claim, a plaintiff generally must establish:

   77.1.    a violation of a right secured by the Constitution or laws of the United States; and

   77.2.    that it was committed by a person acting under color of state law.

78.    To prevail on a § 1983/§1985 conspiracy claim,[5] a plaintiff generally must demonstrate that:

   78.1.    a defendant conspired with others to deprive the plaintiff of her constitutional rights;

   78.2.    at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy; and

   78.3.    the overt act injured the plaintiff.

---

[5] A § 1983 conspiracy claim requires involvement of a state actor while a 42 U.S.C. § 1985 conspiracy claim does not. § 1985(3) in relevant part provides as follows:

> **Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

79. To recover from a city under a failure-to-train claim under § 1983, a plaintiff generally must prove the municipality's training policy or procedure was inadequate; the policymakers of the municipality were deliberately indifferent when adopting the training policy (e.g., disregarding a known or obvious consequence); and the inadequate training policy directly caused the violation of the plaintiff's rights or their injury.

80. Among relief that plaintiff who is successful in a § 1983 and § 1985 lawsuit may recover are compensatory damages, punitive damages [as to persons sued in other than official capacity and not from defendants that are government entities], past and future lost income, attorney fees and expenses, costs of court, and equitable remedies (e.g., injunction).

    80.1.   For example, attorney fees may be recovered under 42 U.S.C. § 1988.

## VI. FIRST CAUSE OF ACTION:
## VIOLATION OF FOURTH AMENDMENT RIGHTS,
## RAISED UNDER 42 U.S.C. § 1983

81. One or more Defendants deprived Plaintiff Bass of her federal constitutional rights.

82. For example, her Fourth Amendment rights to be free from unreasonable seizure and unlawful detention were violated when she was arrested around July 20, 2022 by them, despite their lacking a valid arrest warrant, also lacking probable cause to believe she had committed a crime for which exigent circumstances precluded awaiting issuance of a warrant.

83. This arrest was made under color of state law.

    83.1.   For example, Defendants appeared armed and in law enforcement uniforms, used one or more police vehicles, handcuffed Plaintiff, and transported her to police headquarters for questioning.

84.     In the unlikely event that an arrest warrant for Plaintiff Bass turns out to have existed,  it was invalid, such as for lacking probable cause, being based on misrepresentations and/or omissions in the supporting affidavit(s), or both.

85.     One or more Defendants also appear to have violated her Fourth Amendment rights to be free from an unreasonable search and seizure in relation to what was their collection of a DNA sample from her under purported terms of a claimed warrant.

85.1.     For example, there was no probable cause to justify such a warrant.

85.2.     As well, even if a valid DNA warrant existed, it did not justify arresting her and transporting her in handcuffs to the police station.

85.2.1.     For example, she willingly would have allowed collection of a DNA sample from her at her place of employment.

85.3.     Alternatively or additionally, the warrant was the result of misrepresentations and/or omissions in the supporting affidavit(s).

86.     To the extent that one or more of Defendants may attempt to avoid culpability by claiming they were mere bystanders, they nonetheless are subject to bystander liability.

86.1.     For example, it was or should have been known to all the officers involved that clearly established law does not permit an arrest without a valid warrant and without probable cause to believe a crime has been committed for which exigent circumstances do not allow awaiting issuance of such a warrant.

86.2.     Likewise it was or should have been known to the officers involved that, even if a DNA sample collection warrant existed, it lacked a probable cause basis and did not justify arresting Plaintiff Bass and transporting her to the police department in handcuffs.

86.3.    The defendant officers had the opportunity to object to the violation of Plaintiff's rights, such as during planning for the operation, or as they entered her place of employment, or as once outside they handcuffed her and transported her to police headquarters, or while they interrogated her or prepared to take a DNA sample.

86.4.    Though having the opportunity, it appears none of the officers involved objected to these violations of Plaintiff's rights.

87.    Two or more of the defendant officers also are liable for engaging in a conspiracy to violate Plaintiff's civil rights.

88.    For example, two or more of the officers agreed that they would take part in the arrest and handcuffed transport to the police department and, once there, collect a DNA sample and interrogate Plaintiff Bass.

89.    They did so knowing that the law did not justify their actions (such as due to lack of probable cause) and so they would be violating Plaintiff's civil rights.

90.    At least one of the conspirators engaged in an overt act in furtherance of the conspiracy, such as by taking part in the arrest, detention, handcuffed transportation, interrogation, and DNA sample collection from/of Plaintiff.

91.    One or more such overt acts injured the Plaintiff, such as by falsely indicating to her coworkers and friends that she was likely to be a criminal—in a manner causing her personal and professional reputation to suffer—and also by causing her to endure significant emotional distress, by restricting her freedom of movement, and by intimidating her.

92.    Note that the actions of the officers were not the result of a spur-of-the-moment reaction to an emergency situation, but rather involved advanced planning and the involvement of an

elite unit which focuses on high-risk, high-profile arrests, and used a total of around seven officers.

92.1.   Two of those officers are believed to have joined the operation after travel from Louisiana, so that would have required extra coordination and advance planning, again reflecting that the violations weren't just negligence in the midst of a crisis.

## VII.  SECOND CAUSE OF ACTION:
## CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985

93.    In addition and the alternative to the conspiracy claim rased under § 1983, Plaintiff Bass asserts the same conduct set out elsewhere in this complaint consistuted a prohibited conspiracy in violation of § 1985 (without regard to whether a state actor was involved).

## VIII. DAMAGES AND RELIEF SOUGHT

94.    As a result of the wrongful acts of one or more of Defendants, Plaintiff Bass suffered financial, physical, and emotional harm, among which have been damage to her personal and professional reputation, as well as emotional suffering and distress.

95.    She also has had to retain legal counsel to seek justice for her and protect her rights.

96.    As a result, she seeks an award of compensatory damages, economic damages, declaratory and injunctive relief to bar the defendants from violating hers and others' civil rights in a like manner in the future, pre- and post-judgment interest, attorney fees, expenses, court costs, and any other relief found to be appropriate.

   a.   Among authority under which she seeks an award of attorney fees, expenses, and costs is 42 U.S.C. § 1988.

97.    She also seeks an award of punitive damages against one or more of the defendants, given that the deprivation of her rights was the result of evil motive or intent [for example,

disregarding her rights as part of attempting to punish her or send her a message or to carry out a personal vendetta, rather than for legitimate law enforcement goals], or involves reckless or callous indifference to her fundamental, federally protected rights—such as the right not to be arrested when one is not reasonably believed to have committed a crime.

97.1.   Reflective of improper intent, Defendants unnecessarily made a show of force (e.g., around seven officers showing up at Plaintiff's place of employment and forcing her to leave quickly and arresting her) when she had no criminal record, there was no probable cause for arrest, and she previously and presently had shown a willingness to cooperate in providing information to law enforcement.

98.    No punitive damages are sought from Defendant City of Beaumont.

99.    Defendants' actions understandably and predictably have changed Plaintiff from someone who trusted law enforcement officers to protect citizens and respect their rights to fearing those she encounters instead may deliberately disregard her rights without hesitation or fear of adverse consequence.

## IX. INAPPLICABILITY OF QUALIFIED IMMUNITY

100.   Qualified immunity for Defendants is inapplicable to Plaintiff's claims for reasons such as:

100.1.  It was well-established law at the time of the events at issue that a person may not be arrested (however the action is labelled) for being a potential witness to a crime.

100.2.  It was well-established law at the time of the events at issue that an arrest must be based on an arrest warrant or there must be probable cause on the part of the officer to believe the arrestee committed a crime and that circumstances do not allow time for the officer to obtain a warrant (e.g., risk of flight, danger to public safety).

100.3.  It was well-established law at the time of the events at issue that a search warrant for collection of DNA involves a seizure that must be based on accurate facts supporting probable cause's first having been presented to the issuing magistrate. Or true consent or some other special circumstance must have existed.

101.  Given the circumstances here, no minimally trained police officer could in good faith believe it proper to detain, handcuff, take to police headquarters, take DNA from, interrogate, or do some combination of those to Plaintiff Bass.

102.  To the extent an otherwise facially valid warrant for the arrest and/or DNA collection was issued after all, it would appear to have been based on misrepresentations and/or omissions made to the magistrate such that the magistrate would not have been able to exercise independent judgment in reviewing the supporting affidavit(s) for probable cause.

103.  As well, qualified immunity is inapplicable as to the Defendant City of Beaumont because it is a municipality rather than an individual person.

104.  Further, qualified immunity is inapplicable because one or more of the following is true:

104.1.  This is a court-created doctrine inconsistent with the text of 42 U.S.C. § 1983. For example, the rule officers can be held liable only when the violated constitutional right already was "clearly established" relies on wording not in the statute and that in fact collides with § 1983's broad and unqualified textual command.[6]

---

[6] 42 U.S.C. § 1983 provides in relevant part that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

104.2.  The events here did not involve the sort of "split-second judgments" or need for "breathing room" for which the doctrine often is used to protect police officers.

104.3.  In any case, prior to ruling on any qualified immunity defense this court must first determine if misrepresentations and/or omissions were made by one or more officers to the magistrate in the supporting affidavit(s).

104.4.  The doctrine improperly excuses all but the most blatant misconduct of government officials, while ordinary citizens are instructed ignorance of the law is no excuse.

## X. JURY TRIAL

105.  A jury trial is requested.

## PRAYER

FOR SUCH REASONS, Plaintiff requests the Court enter judgment against Defendants and provide relief such as that requested above, additionally granting her such other and further relief in law and equity to which she may be entitled, while denying Defendants any relief.

Respectfully Submitted,

**SCHLEICHER LAW FIRM, PLLC**

By:  /s/ David R. Schleicher
David R. Schleicher
TX Bar 17753780
david@gov.law
510 Austin Ave., Ste. 110
Waco, Texas 76701
(254) 776-3939x1
(254) 776-4001 fax

**COUNSEL FOR PLAINTIFF LINH BASS**